**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHANIE HENDRICKS,** | : | **Civil No. 1:25-CV-874** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**<br>**Commissioner of Social Security** | :<br>: | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM OPINION

## I. Introduction

This case comes before us for consideration of a narrow, specific question: Did the ALJ err in discounting the plaintiff's need for a cane?

As to this issue, the ability to ambulate without assistance is often a key component to employment. Therefore, when ambulation is impaired, it follows that the ability to work is undermined. Social Security regulations recognize this basic truth and specifically contemplate that the "requirement to use a hand-held assistive device may . . . impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). Thus, the issue of whether a claimant requires an assistive device to ambulate is one

that can be outcome determinative in disability cases. For this reason, an Administrative Law Judge's (ALJ) decision eschewing a claimant's need to use an assistive device must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

We are reminded of these guiding tenets of Social Security practice as we turn to this case. The plaintiff, Stephanie Hendricks, advances a focused attack upon this decision challenging the ALJ's conclusion in her case that: "The evidence of record as a whole does not support the need for a cane for ambulation." (Tr. 28). This ALJ conclusion, in turn, rests on three factual pillars. First, the ALJ found that: "The record does not reflect a prescription by a treating physician." (Id.) Second, the ALJ asserted that: "there is no evidence of complaints in regard to ambulation or evidence of use of a cane prior to the alleged onset date." (Id.) Finally, the ALJ insisted that Hendricks: "reported different reasons for its use." (Id.)

According to Hendricks, these three pillars of the ALJ's decision are pillars of sand which collapse upon critical scrutiny. Upon reflection, we agree that the stated rationale for the ALJ's conclusion that "[t]he evidence of record as a whole does not support the need for a cane for ambulation," is often contradicted by substantial evidence. That evidence indicates that Hendricks was prescribed a cane prior to her disability onset; that multiple medical sources opined that she needed a

cane to ambulate; that Hendricks' clinical record was replete with references to her use of a cane; that the use of the cane to ambulate was documented in the clinical record prior to her alleged date of onset of disability; and that she consistently stated that she needed the cane to ambulate due to chronic pain and weakness. This evidence substantially undermined the factual pillars supporting the ALJ's decision that Hendricks had not shown that the use of a cane was medically necessary and given the ALJ's failure "to acknowledge [these] material facts, [ ] we cannot discern whether the ALJ discounted this evidence for a good reason, a bad reason or no reason at all." Perkins v. Bisignano, No. 1:25-CV-1321, 2026 WL 3026211, at *1 (M.D. Pa. Oct. 8, 2026) (remanding for failure to acknowledge evidence regarding use of a cane).

Simply put, the ALJ erred in failing to develop the record on the issue of the medical necessity of Hendricks' cane use by rejecting or misstating material evidence, including medical opinions, clinical notes, and the plaintiff's own statements that she had been prescribed a cane. This error now compels the remand of this case. Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Perkins, 2026 WL 3026211, at *1; Brown v. Bisignano, No. 1:24-CV-1855, 2026 WL

1022418, at *12 (M.D. Pa. Apr. 15, 2026); Wolabaugh v. Bisignano, No. 4:24-CV-1989, 2026 WL 561225, at *1 (M.D. Pa. Feb. 27, 2026); Stahurski v. O'Malley, No. 3:22-CV-1807, 2024 WL 3204243, at *1 (M.D. Pa. June 27, 2024); Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

### A. Introduction

On July 14, 2022, Stephanie Hendricks filed applications for a period of disability and disability insurance benefits as well as supplemental security income pursuant to Titles II and XVI of the Social Security Act. (Tr. 19). In both applications, Hendricks alleged disability beginning July 11, 2022. (Id.) According to Hendricks she was disabled due to a cascading array of impairments including migraines; anxiety and depression; major depressive disorder; fibromyalgia; lumbar facet arthropathy; uveitis; renal vasculitis; central retinal vein occlusion with macular edema of the left eye; Ehlers Danlos syndrome; chronic pain syndrome; and complex regional pain syndrome of the right upper and bilateral lower extremities. (Tr. 22). Hendricks was born on February 9, 1988, and was 34 years old on the

alleged disability onset date which is defined as a younger individual under the Commissioner's regulations. (Tr. 33).

The pivotal issue in this case involves the ALJ's consideration of Hendrick's assertion that she needed a cane to ambulate. With respect to this issue, substantial evidence suggested that Hendricks required the assistance of a cane to walk. As discussed below, this evidence came in many forms including anecdotal, clinical and medical opinion proof.

### B. <u>The Evidence Indicated that Hendricks Was Prescribed a Cane</u>

At the outset, the record contains evidence indicating that Hendricks was prescribed a cane. This evidence comes directly from Hendricks, who testified that she needed a cane to ambulate. (Tr. 48). Hendricks specifically stated that she had been prescribed a cane by her former treating physician, testifying as follows:

> Q . . . Did a doctor prescribe the cane for you?
>
> A Yes.
>
> Q Who prescribed it?
>
> A It was a Dr. Kuncio Kim [phonetic]. I don't know if that's how you pronounce the first name. She is now retired. And she originally -- for some reason she prescribed it for the Ehlers-Danlos syndrome, but it was for the complex regional pain syndrome. I have both.
>
> Q Yes, ma'am. When were you prescribed the cane?

A I don't remember exactly how long ago it was.

Q Okay.

A But I've used it for the complex regional pain syndrome as I had a flareup before I ended up using it.

(Tr. 54-55).

Hendricks longstanding use of this cane was further confirmed by Devin Lombardo, her boyfriend, who stated in October of 2022 that Hendricks had needed a cane to stand and walk since 2015. (Tr. 279-280).

### C. <u>The Clinical Record is Replete With References to Hendricks' Need for a Cane</u>

In addition to these anecdotal reports of Hendricks' medically prescribed cane use since 2015, the clinical record was replete with treatment statements confirming that the plaintiff needed a cane to assist her in walking and standing. Moreover, contrary to the ALJ's assertion that there was no evidence of cane use before the onset of her claimed disability, many of these clinical notes documented cane use prior to that onset date, July 11, 2022.

In fact, more than one year prior to this alleged date of onset, on June 24, 2021, a consulting examining doctor, Dr. James Godyear, thoroughly documented Hendricks' need for a cane. At that time Dr. Goodyear reported that "[t]he [Plaintiff] now uses a cane for ambulation because of the constant bilateral foot pain as well as

her bilateral knee and hip pain," (tr. 771); stated that "[t]he Plaintiff uses a hand-held cane which she brought with her for today's consultation," (tr. 772); and documented that "[t]he [Plaintiff] brought a hand-held cane to the exam." (Tr. 774). Based upon his examination, Dr. Goodyear specifically found that Hendricks required a cane to ambulate and that her use of a cane was medically necessary. (Tr. 778).

This was not an isolated report. Quite the contrary, February 19, 2022, Geisinger treatment notes confirmed that Hendricks was walking with a cane. (Tr. 893). Additionally, on June 24, 2022, emergency department notes reported that Hendricks used a cane, crutches, or a walker to ambulate. (Tr. 1094). On July 12, 2022, clinical files documented that Hendricks' gait was "modified independent with hurry cane." (Tr. 836).

Following Hendricks' onset of disability in July 2022, treatment providers continued to consistently state that she needed a cane to walk. For example, patient questionnaires completed by multiple caregivers on Sept. 22, 2022, Oct. 7, 2022, Oct. 20, 2022, Nov. 22, 2022, and Dec. 13, 2022 responded "yes" to the question: "Does patient utilize an assistive device, such as cane, walker, crutches, wheelchair or scooter?" (Tr. 1263, 1302, 1337, 1418, 1459).[1]

---

[1] We note on two occasions Hendricks' ophthalmology practice indicated that she did not use a cane. (Tr. 1223, 1377). These isolated entries from practitioners whose

Beyond these questionnaire responses, examination reports from numerous healthcare providers described Hendricks' ongoing cane use. August 17, 2022, clinical files described Hendricks' impaired functional mobility, balance, difficulty walking, abnormality of gait, muscle weakness gait, and endurance. (Tr. 826). It was specifically noted that her ambulation tolerance was only "5-10 minutes with hurry cane." (Tr. 827). During a September 8, 2022, neurology follow-up appointment, it was observed that Hendricks "walks with [a] cane." (Tr. 317).

On November 15, 2022, Dr. Alfred E Denio described Hendricks' condition in the following terms:

> The patient has a complex rheumatologic history with longstanding problems with complex regional pain syndrome, primarily in her right foot that began abruptly 10 years ago when she suddenly had pain and swelling in her right foot. A bone scan suggested she might have complex regional pain syndrome and she has carried that diagnosis since then. *In fact, has had to use a cane and during exacerbations, has difficulty walking due to the severity of the right foot pain.*

(Tr. 1561). Thus, Dr. Denio characterized Hendricks' impairments as both longstanding and so severe that she needed a cane to ambulate.

---

concerns were unrelated to Hendricks' ability to walk unassisted do not, in our view, materially alter the weight of the evidence. Rather, at most, they define a factual question which merited further consideration, consideration which the ALJ did not give to this issue.

On January 11, 2023, a second consulting examining source, CRNP Kelly Schultz indicated following an examination of Hendricks that "She uses a cane all the time although she can walk short distances without it," (tr. 1503), and "[u]sed a cane. Had a limp with and without the cane." (Tr. 1505). CRNP Schultz also specifically opined based upon her examination that Hendricks required the use of a cane to ambulate and that the use of a cane was medically necessary. (Tr. 1509). These findings were echoed by a treating source, Dr. Denio, who confirmed her use of a cane on February 28, 2023. (Tr. 362).

Hendricks continued to rely upon a cane through the Summer and Fall of 2023. Thus, on July 11, 2023, Dr. Nichole Lee Hossler acknowledged her ongoing use of a cane. (Tr. 1691). Four months later, on November 9, 2023, Dr. Kaitlyn Druyor reported that Hendricks "walks with cane due to pain from complex regional pain syndrome." (Tr. 1846). Dr. Druyor reiterated these findings on February 19, 2024, when she stated that Hendricks "uses a cane due to chronic right leg weakness," (tr. 1790), and noted that she "walks with cane." (Tr. 1791).

**D. <u>The Medical Opinion Evidence Supported the Medical Necessity of a Cane for Hendricks</u>**

There was also a broad medical opinion consensus that Hendricks required a cane to ambulate. Both of the consulting medical sources who examined Hendricks

agreed that her use of a cane was both required and medically necessary. For example, in June of 2021, one examining source, Dr. Goodyear, specifically found that Hendricks required a cane to ambulate and that her use of a cane was medically necessary. (Tr. 778). On January 11, 2023, a second consulting examining source, CRNP Kelly Schultz also specifically opined based upon her examination that Hendricks required the use of a cane to ambulate and that the use of a cane was medically necessary. (Tr. 1509). Thus, every medical expert who examined Hendricks opined that her cane usage was medically necessary.[2]

**E. The ALJ Hearing**

A hearing was held in Hendricks' case on March 5, 2024. (Tr. 41-81). Hendricks and a vocational expert testified at this hearing. (Id.) In her testimony, Hendricks stated that she needed a cane to walk; that a cane had been prescribed for her by a now retired treating physician; and that her regional complex pain syndrome and other comorbidities made cane use necessary. (Tr. 49, 54-55).

The ALJ's questioning of Hendricks at this hearing reflected the ALJ's skepticism regarding her cane use, although on closer consideration it is apparent

[2] As for the state agency non-examining experts, while their reports do not speak to this issue, the reports are replete with references to Hendricks' use of a cane. (Tr. 86, 87, 91, 92, 98, 103, 104, 117, 118, 119, 129, 130, 131).

that the ALJ's skepticism was a result of the decision-maker's misreading of the clinical record. For example, during the hearing Hendricks and the ALJ engaged in the following exchange:

> Q I looked—I actually took [a] glance of records prior to your alleged onset state, in the months before your alleged onset date. . . you were -- had an emergency room visit. And there's no mention of a cane in any of those records . . . So, that's why I was trying to understand how it came to be, you know?
>
> A I can understand your confusion. I don't know why they didn't write it in, that I had a cane with me.

(Tr. 55).

The ALJ's statement that there was no mention of a cane in records prior to Hendricks' July 2022 alleged onset date impugned her integrity without cause. On this score, the ALJ was simply wrong. By July of 2022, there were multiple notations confirming her use of a cane, including a June 24, 2022, emergency department note stating that Hendricks used a cane, crutches, or a walker to ambulate. (Tr. 1094). Moreover, by June of 2021, one year prior to the alleged onset date, a consulting examining source had opined that Hendricks' cane use was medically necessary. (Tr. 778). Nonetheless, relying upon this basic confusion on the ALJ's part regarding the chronology of events, this fact-finder cast doubt on Hendricks' veracity.

The ALJ then posed a single hypothetical question to the Vocational Exert which did not entail use of a cane. (Tr. 75-77). After the Vocational Expert identified light work jobs which she opined Hendricks could perform, on questioning by counsel, the Vocational Expert admitted that Hendricks could do none of these jobs if she needed a cane and would be confined to sedentary work. (Tr. 78).

**F. The ALJ's Decision**

Following this hearing, the ALJ issued a decision denying Hendricks' claim on April 24, 2024. (Tr. 16-40). In that decision, the ALJ first concluded that Hendricks met the insured requirements of the Act and had not engaged in substantial gainful activity since July 11, 2022, her alleged onset date. (Tr. 21). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Hendricks had the following severe impairments: migraines; anxiety and depression; major depressive disorder; fibromyalgia; lumbar facet arthropathy; uveitis; renal vasculitis; central retinal vein occlusion with macular edema of the left eye; Ehlers-Danlos syndrome; chronic pain syndrome; and complex regional pain syndrome of the right upper and bilateral lower extremities. (Tr. 22). At Step 3, the ALJ determined that Hendricks' impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 22-26).

Between Steps 3 and 4, the ALJ concluded that Hendricks' retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant is unable to see out of her left eye and is unable to do activities which require bilateral vision. The claimant is able to work with large and small objects, avoid ordinary hazards of the workplace, and read. The claimant can frequently work at unprotected heights and around moving mechanical parts. The claimant can frequently operate a motor vehicle. The claimant can tolerate frequent exposure to weather; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibration. The claimant can tolerate loud noise. The claimant is able to perform simple, routine tasks, but not at a production rate pace, such as assembly line work. The claimant is able to perform simple work-related decisions and tolerate few changes in a routine work setting, defined as occasional changes in a routine work setting.

(Tr. 26).

Notably, this RFC determination made no provision for Hendricks' use of a cane, instead expressly rejecting the proposition that her cane was medically necessary. The ALJ justified this decision, which discounted the medical source consensus that Hendricks' was required to use a cane in the following summary fashion:

> The evidence of record as a whole does not support the need for a cane for ambulation. The record does not reflect a prescription by a treating

> physician and there is no evidence of complaints in regards to ambulation or evidence of use of a cane prior to the alleged onset date. Medical records also generally vary in reported use of a cane and she reported different reasons for its use. More specifically, at the hearing, the claimant reported that she uses a cane for her complex regional pain syndrome, although she could walk short distances without it (Exhibit 11F). She also reported that she uses a cane due to pain from regional complex pain syndrome at a neurological appointment in November 2023 (Exhibit 19F, p. 63). However, she reported that she uses a cane due to chronic leg weakness at a neurological appointment in February 2024 (Exhibit 19F, p. 7). Nevertheless, treatment records in January 2024 note that the claimant reported she tries to go outside for walks, but that she is limited by the weather (Exhibit 19F, p. 31).

(Tr. 28).

Having concluded that Hendricks' cane use was not medically necessary, the ALJ then found that Hendricks could do other light jobs in the national economy, (tr. 33-34), work which the VE testified she could not perform if she required a cane to ambulate. Thus, the ALJ concluded Hendricks had not met the exacting standard of disability and denied her claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Hendricks argues that substantial evidence does not support the ALJ's RFC assessment because the ALJ failed to properly address her cane use in determining the RFC. We agree. Accordingly, we will remand this case for further consideration by the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

**C. This Case Will Be Remanded for Further Review.**

On appeal, the plaintiff argues the ALJ failed to properly address her cane use in determining the RFC.

We agree.

Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal.

At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of [an assistive device] unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of [an assistive device] in a residual functional capacity assessment, even if the claimant was prescribed a[n assistive device] by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive device on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant

mobility requirements, without accounting for her need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

This requirement to address an established need for an assistive device is coupled with the ALJ's duty to develop the record and resolve inconsistencies and ambiguities which could render a decision of not disabled. On this score, while the burden "lies with the claimant to develop the record regarding [ ] her disability because the claimant is in a better position to provide information about [ ] her own medical condition," it is the ALJ's duty to eliminate evidentiary gaps that prejudice the claimant's case and resolve any material conflict or ambiguity in the evidence. Money v. Barnhart, 91 F. App'x 210, 215-16 (3d. Cir. 2004).

In this case, the ALJ's conclusion that Hendricks did not need a cane to ambulate is akin to a legal three-legged stool. That conclusion rests on three factual premises: First, the ALJ's assertion that there was no prescription for a cane; second, the ALJ's insistence that there is no evidence of complaints in regards to ambulation or evidence of use of a cane prior to the alleged onset date; and, third, the ALJ opinion that Hendricks reported different reasons for her use of a cane.

None of these three legs which form the foundation of this conclusion can withstand scrutiny. At the outset, the ALJ's reliance upon the assertion that Hendricks was not prescribed a cane fails for at least two reasons.

First, this assertion misconstrues the law by suggesting that a claimant must have a prescription for a cane to establish medical necessity. Quite the contrary, it is well-settled that, "[t]he standard described in SSR 96–9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, she only needs to present medical documentation establishing the need for the device." Staples v. Astrue, 329 F. App'x 189, 191–92 (10th Cir. 2009). See also Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."); SEAN W., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant., No. 20-CV-1653-FPG, 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022); Krieger v. Comm'r of Soc. Sec., No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), report and recommendation adopted, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019).

In this case, there was a medical consensus between both examining consulting sources that Hendricks' cane use was medically necessary. This type of

uncontradicted medical documentation is sufficient in our view to require some consideration of the use of a cane when formulating a claimant's RFC.

Beyond this legal error, the ALJ erred as a matter of fact in stating that there was no evidence that Hendricks had been prescribed the use of a cane. Hendricks herself testified that she had received a prescription for a cane. At a minimum, this testimony created a factual question triggering the ALJ's duty to develop the record. It did not provide grounds for categorically denying the existence of a prescription for a cane. Given this ambiguity in the evidence, the ALJ was required to develop the record on the issue of the prescription of the walker before concluding it was not medically necessary. See e.g. De Camacho v. O'Malley, 717 F. Supp. 3d 354, 368 (S.D.N.Y. 2024) ("First, [the plaintiff] testified that she had been 'prescribed' a cane by her doctor. (R.318.) Particularly given the absence of a medical record indicating that a cane had been prescribed, the ALJ had a duty to develop the record on that issue. . . . Whether or not [the plaintiff] had been prescribed a cane is a question of objective fact. It is not an issue of evaluating the claimant's credibility about the extent and limitations of her symptoms.")

The ALJ's insistence that there was no evidence of cane use by Hendricks prior to her July 2022 alleged onset date is likewise simply incorrect. Prior to July 2022, numerous medical sources had documented Hendricks' use of a cane to walk.

Indeed, one year prior to this onset date, in June 2021, Dr. Goodyear, a consulting, examining physician had opined that Hendricks' use of a cane was medically necessary. (Tr. 778). Given this evidence, the ALJ erred in a very basic way when stating that there was no proof that Hendricks used a cane prior to July 2022.

This error, in turn, colored the ALJ's assessment of Hendricks' veracity in ways which were profound and prejudicial. Thus, the ALJ's contention that Hendricks reported different reasons for her use of a cane, an implicit attack upon her credibility, cannot withstand scrutiny. Fairly construed, the evidence shows that Hendricks consistently stated that her mobility was limited by her complex regional pain syndrome and related comorbidities.

Finally, the ALJ's confusion regarding the clinical record led the ALJ to reject the examining source consensus that Hendricks' use of a cane was medically necessary for the wrong reason. For example, the ALJ discounted CRNP Schultz's opinion that Hendricks needed a cane to ambulate based, in part, upon the conclusion that "as for use of a cane for ambulation, this is not consistent with the evidence, as the record reflects that she uses it for different reasons, there is no prescription in the records or evidence of use prior to the alleged onset date." (Tr. 31). The ALJ is simply wrong in suggesting that the was no evidence that the cane was prescribed and no evidence of the use of the cane prior to the alleged date of onset. Since it is

axiomatic that an ALJ may not reject a medical opinion for the wrong reasons, the error also compels a remand.

These errors on the part of the ALJ were clearly prejudicial since a Vocational Expert testified that the use of a cane would limit Hendricks to sedentary work. Moreover, the ALJ did not determine if sufficient other jobs existed at the sedentary level in the national economy that Hendricks could perform. Accordingly, the evidence that Hendricks' cane use was medically necessary was potentially outcome determinative. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); SSR 96-9p. See also Ubiles v. Berryhill, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 (W.D.N.Y. Sept. 29, 2017), report and recommendation adopted, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (citing Wright v. Colvin, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

In conclusion, more is needed here both to satisfy the ALJ's burden of articulation and the ALJ's duty to fully develop and accurately consider the record with regard to Hendricks' cane use. Accordingly, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note

that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV. <u>Conclusion</u>

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these claims will be vacated, and this case will be REMANDED to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November 9, 2026